IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LLOYD LONDON                                                                                            PLAINTIFF

v.                                             CASE NO.  07-2087

JIMMY DORNEY, Sheriff, Johnson County;
RUTH ANN HOWELL, Administrator,
Johnson County Jail; JERRY DORNEY,
Chief Deputy, Johnson County                                                                    DEFENDANTS

REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Lloyd London (Plaintiff) filed this *pro se* civil rights action under 42 U.S.C. § 1983 and it was transferred from the Eastern District of Arkansas to this Court on August 22, 2007. (Doc. 6) Defendants filed a Court-ordered Motion for Summary Judgment (Doc. 36), which is now pending before the Court.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), this case is referred to the undersigned by the Honorable Judge Robert T. Dawson for the purpose of issuing a report and recommendation on Defendants' Motion for Summary Judgment. Accordingly, the Court issues this Report and Recommendation.

**I. Background**

Plaintiff's claims stem from the time he was incarcerated in the Johnson County Detention Center. Plaintiff has alleged his outgoing legal mail was taken, he was denied due process because more than seventy-two (72) hours elapsed from his arrest to the time of his initial appearance, and he was denied access to the courts by Defendant Howell because she refused to accept any grievances from him, including those requesting legal materials or law library access.

**II. Discussion**

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 (c). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir.1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**A. Official Capacity Claims**

Plaintiff's official capacity claims are tantamount to suing Johnson County. Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Because *Monell* specifically rejected liability based solely on *respondeat superior*, *id.* at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir.1994). Rather, official-capacity liability must be based on deliberate indifference or tacit authorization. *Id.*

Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell,* 436 U.S. at 690-91. The Eighth Circuit has upheld the grant of summary judgment because a plaintiff failed to plead that the defendant "had a policy or custom of false arrests or malicious prosecution."

*Sanders v. Sears, Roebuck & Co.*, 984 F.3d 972, 976 (8th Cir. 1993).

In this case, Plaintiff has articulated no policy or procedure of Johnson County which deprived him of his constitutional rights. Accordingly, Summary Judgment is due to be granted on any of Plaintiff's official capacity claims.

### B. Personal Capacity Claims

1. <u>Interference with Mail</u>

Plaintiff alleges interference with his legal mail on June 23, 2007 when he attempted to mail Reverend Herbert Tilley and on August 5, 2007 when he attempted to mail Jane Houston, Clerk of the Court. Plaintiff complains he has not been capable of preparing his criminal defense due to this interference with his mail. Plaintiff does not state how he knows this mail was not sent to the recipients. Plaintiff acknowledges all of the mail in question was not legal mail. Plaintiff does not state whether the letters he sent were marked "legal mail" or otherwise to alert prison officials.

Plaintiff does include, as Exhibit 1 to his response to the Motion for Summary Judgment, what appears to be a handwritten copy of a cover letter sent to Judge Sutterfield and Deputy Public Defender Michael Helms by Deputy Prosecuting Attorney Bruce Wilson, referencing the Tilley letter. Mr. Helms was representing Plaintiff in Plaintiff's state criminal case at the time of the letter. The Court assumes, by construing all inferences in favor of the Plaintiff, that Plaintiff's mail to Rev. Tilley was opened at the jail and then forwarded to Mr. Wilson, who then forwarded it to Mr. Helms and Judge Sutterfield. The contents of Plaintiff's letter to Rev. Tilley were regarding the facts of Plaintiff's criminal case and asking for a deposition upon written questions from Rev. Tilley.

Plaintiff does not describe the mail he attempted to send to Jane Houston, but the Court assumes it was related to his state criminal case.

The first question is whether Plaintiff's mail was "legal mail."  The letter sent to Jane Houston as Clerk of Court would likely fall into this category, or at lest be given the same protection as mail to an attorney.  Mail to the courts may be delivered by the inmate to prison officials in sealed envelopes and may not be opened, read, or inspected.  *See, e.g., Stone-El v. Fairman*, 785 F. Supp. 711 (N.D. Ill. 1991) (no legitimate interest in opening mail from inmates to judges or court clerks); *Taylor v. Sterrett*, 532 F.2d 462 (5th Cir. 1976) (holding there is no justification "whatsoever" for opening or reading correspondence addressed to the courts)*; Bach v. People of State of Ill.*, 504 F.2d 1100 (7th Cir. 1974); *Haston v. Galetka*, 799 F. Supp. 1129 (D. Utah 1992); *Gates v. Collier*, 349 F. Supp. 881 (N.D. Miss. 1972), judgment aff'd, 489 F.2d 298 (5th Cir. 1973), reh'g granted, 500 F.2d 1382 (5th Cir. 1974) and judgment aff'd, 501 F.2d 1291 (5th Cir. 1974) and order amended, 390 F. Supp. 482 (N.D. Miss. 1975), judgment aff'd, 525 F.2d 965 (5th Cir. 1976) and order supplemented, 423 F. Supp. 732 (N.D. Miss. 1976), judgment aff'd and remanded, 548 F.2d 1241 (5th Cir. 1977); *Martyr v. Bachik*, 755 F. Supp. 325 (D. Or. 1991) (extending this right to mental patients who have been found not guilty by reason of insanity and confined to a mental facility); *Stover v. Carlson*, 413 F. Supp. 718 (D. Conn. 1976).  Courts have steadfastly refused to permit prison officials to censor, screen or in anyway interfere with communications to and from Courts. *See, e.g., Brewer v. Wilkinson*, 3 F.3d 816 (5th Cir. 1993) (holding that allegation that prison officials' actions prevented inmates from submitting papers and pleadings to the court stated a constitutional violation); *Bryan v. Werner*, 516 F.2d 233 (3d Cir. 1975); *Sostre v. McGinnis*, 442 F.2d 178 (2d Cir. 1971).

The Eighth Circuit has not explicitly addressed whether correspondence *from* arguably legal sources other than attorneys, i.e. courts, judges, advocacy organizations, or law enforcement officials, is to be considered "legal mail" for the purposes of constitutional protection.  However, the

Eighth Circuit in *Harrod v. Halford,* 773 F.2d 234, 236 (8th Cir.1985), held that "the mere fact that a letter comes from a legal source is insufficient to indicate that it is confidential and requires special treatment." In *Harrod,* the Eighth Circuit found it permissible for a correctional facility to open letters not properly marked as "confidential" as required by the facility's policy even though the letters were sent by the clerk of the district court, a district judge, a magistrate judge, the United States Department of Justice, the county corrections department, the bureau of community correctional services, and a law firm. *Id.* However, in *Stone*, 785 F. Supp. at 716, the Northern District of Illinois differentiated between inmate correspondence *from* a Clerk of Court and *to* a Clerk of Court, holding the court "can fathom no legitimate governmental interest in opening or inspecting letters from inmates to either judges or clerks." *Id.* At 716. The Court does find the Norther District of Illinois rationale to be sound.

It appears there is an issue of fact regarding 1) whether Plaintiff's mail to Jane Houston on August 5, 2007 was stopped by Defendants[1], and if so 2) what injury Plaintiff suffered from this delay[2]. Even if the injury is *de minimus*, there may still be a constitutional consideration given the rationale regarding inmate correspondence from an inmate to a clerk of court, as cited above.

However, regarding Plaintiff's letter to Rev. Tilley, it does not appear this would be considered "legal mail." Rev. Tilley was a witness to the incident underlying Plaintiff's state criminal case, and correspondence to him would not appear to be privileged. Reading "non-privileged" outgoing mail is not a constitutional violation. *See, e.g.*, *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993) (holding that prison officials are justified in screening outgoing nonlegal mail).

---

[1] Defendants do not mention this correspondence in their Summary Judgment Motion.

[2] Plaintiff states he was not able to adequately prepare for his criminal defense, however, as the Plaintiff does not state the nature of his letter to Jane Houston, it is impossible for the Court to determine the connection of this allegedly withheld correspondence and any injury.

Moreover, the Court can not find any constitutional violation in the apparent copying and forwarding of Plaintiff's letter to Prosecuting Attorney Wilson (and later Public Defender Helms and Judge Sutterfield). *Gassler v. Wood*, 14 F.3d 406 (8th Cir. 1994) (holding the answer to be "plainly no" regarding question of whether the sending copies of outgoing non-legal mail to a third-party was a constitutional violation), *see also United States v. Kelton*, 791 F.2d 101, 103 (8th Cir.) (prisoner's Fourth Amendment rights were not violated when prison official inspected and copied prisoner's outgoing mail), *cert. denied,* 479 U.S. 989 (1986). The only issue remaining is if the letter to Rev. Tilley was not sent at all, rather than being sent with copies made and forwarded as discussed above.

Plaintiff does not state if his mail was also forwarded to Rev. Tilley, but appears to assert that it was completely withheld from delivery. The Supreme Court has states "the legitimate governmental interest in the order and security of penal institutions justifies the impositions of certain restraints on inmate correspondence." *Procunier v. Martinez*, 416 U.S. 396, 412-13 (1974). There are clearly issues of fact regarding 1) whether the correspondence to Rev. Tilley was withheld from delivery, and 2) what governmental interests the detention center may have had in this withholding. Defendants do not address these issues in their Motion for Summary Judgment.

Accordingly, I recommend Defendants' Motion for Summary Judgment be **DENIED** regarding Plaintiff's claims of interference with his mail.

### 2. Delayed Initial Appearance

Plaintiff further claims his constitutional rights were violated when seventy-six hours and twenty minutes elapsed from the time of his arrest until his first appearance. The issue is a pretrial detainee's right to a prompt appearance in court, after arrest by warrant. The Due Process Clause of the Fourteenth Amendment controls. *Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902, 905 (8th Cir.1999), *cert. denied,* 528 U.S. 1157 (2000). The Due Process Clause forbids an extended

detention, without a first appearance, following arrest by warrant. *Hayes v. Faulkner County, Ark.*, 388 F.3d 669, 673 (8th Cir. 2004). As a substantive due process analysis, the Court must consider whether deliberate indifference to prisoner welfare may sufficiently shock the conscience to amount to a substantive due process violation." *Id.* at 674. The third step in the substantive due process analysis is determining whether by the totality of the circumstances, the defendants' conduct shocks the conscience, as a matter of law. *Id.* at 675.

Arkansas Rule of Criminal Procedure 8.1, is entitled "Prompt first appearance." The Rule requires: "An arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay ." Ark. R.Crim. P. 8.1. Rule 8.1 is mandatory. *Bolden v. State,* 262 Ark. 718, 561 S.W.2d 281, 284 (1978). Detentions of several days may violate Rule 8.1. *Duncan v. State,* 291 Ark. 521, 726 S.W.2d 653, 656 (1987) (3 1/2 days); *Cook v. State,* 274 Ark. 244, 623 S.W.2d 820, 821 (1981) (31 days); *cf. Richardson v. State,* 283 Ark. 82, 671 S.W.2d 164 (1984) (56 days). Rule 8.1 is designed to protect "basic and fundamental rights which our state and *federal constitutions* secure to every arrestee." *Bolden,* 561 S.W.2d at 284 (emphasis added).

Plaintiff was arrested on Friday April 6, 2007, which was Good Friday and the beginning of Easter weekend that year. Plaintiff was taken before a judge on Monday, April 9, 2007. There is no evidence or indication in the record the delay in Plaintiff's first appearance was due to anything other than the timing of the holiday and the weekend. This case is not the same as *Duncan*, 726 S.W.2d 281, where the inmate was intentionally delayed a hearing in order to aid in securing a confession. Plaintiff here was given a hearing as promptly as the calendar would allow. Clearly, this does not shock the conscience or establish a due process violation. It is my recommendation Defendants' Motion for Summary Judgment be **GRANTED** as to Plaintiff's claim of a delayed

initial appearance.

### 3. Access to the Courts.

Finally, Plaintiff claims he was denied access to the Courts. Plaintiff states that on July 19, 2007 Defendant Howell refused any letters or grievances from him requesting case law, law books, or library access. As this date is previous to Plaintiff filing this case, it is assumed Plaintiff was seeking materials related to his state criminal case. "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (citations omitted). "To prove actual injury, [a prisoner] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" *Id.* (quoting *Lewis v. Casey,* 518 U.S. 343, 353 (1996)).

At the time of July 19, 2007, Plaintiff was represented by a Public Defender. It was not until October 3, 2007, (by Plaintiff's account) that Plaintiff was granted pro se status in his state criminal case. It is well established that access to the law library is not the only way to secure access to the courts. If Plaintiff was granted access to his attorney at this time, his claim of access to the courts may fail. However, Plaintiff indicates his right to law library access was never restored, even after he achieved pro se status. Plaintiff also indicates he had to ask for court extensions and suffered other injuries due to the denial of access to the courts. Accordingly, a genuine issue of fact regarding Plaintiff's claim exists regarding 1) whether Plaintiff had access to the courts by his attorney or other means after Howell's July 19 denial, and 2) whether Plaintiff was given access to the court via the law library or other means once he was representing himself pro se. Accordingly, it is my recommendation Defendants' Motion for Summary Judgment be **DENIED** regarding Plaintiff's

claim of denial of access to the courts.

### III. Conclusion

For the reasons stated above, it is my recommendation that Defendant's Motion for Summary Judgment (Doc. 36) be **GRANTED** in part and **DENIED** in part. I recommend Defendants' Motion for Summary Judgment be GRANTED as to the due process claims of a delayed initial appearance. I recommend Defendants' Motion for Summary Judgment be DENIED as to the following claims: interference with outgoing mail, and denial of access to the Courts.

**The parties have ten (10) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **10th day of March 2009.**

/s/ J. Marschewski
HON. JAMES MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE