IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LLOYD LONDON                                                        PLAINTIFF

v.                                        Civil No.:  07-cv-2087

JIMMY DORNEY, Sheriff, Johnson County;
RUTH ANN HOWELL, Administrator,
Johnson County Jail; JERRY DORNEY,
Chief Deputy, Johnson County                                       DEFENDANTS

REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

        Lloyd London (Plaintiff) filed this *pro se* civil rights action under 42 U.S.C. § 1983 in the Eastern

District of Arkansas.  It was transferred to this district on August 22, 2007.  (Doc.  6).  Plaintiff's Complaint

was filed *in forma pauperis* (IFP).  (Doc.  8).  The undersigned held an evidentiary hearing on January 12,

2010, regarding Plaintiff's claims he was denied access to the Court and denied access to the mail.  Pursuant

to the provisions of 28 U.S.C. § 636(b)(1) and (3), this case is referred to the undersigned by the Honorable

Robert T.  Dawson, United States District Judge for the Western District of Arkansas, for the purpose of

issuing a report and recommendation.  Accordingly, the Court issues this Report and Recommendation.

**I.  Background and Witnesses Presented**

        At the evidentiary hearing I heard testimony from the following witnesses in the following order: (1)

Herbert Tilley, (2) Allie Wilkerson, (3) Robert Peterson, (4) Jane Houston, (5) Cris Curtis, (6) Jerry Dorney,

(7) Jimmy Dorney, and (8) Lloyd London.

        The undersigned has also considered, in addition to the testimony of witnesses and the exhibits

presented at trial, the Affidavit of Lisa Jones Ables (doc.  84), and the transcript from the Circuit Court of

Johnson County, Arkansas, Fourth Division, regarding the proceedings before the Honorable Dennis C.

Sutterfield on the dates of October 3, 2007 and December 3, 2008 in criminal matter 2007-60, in which

Plaintiff herein was a criminal defendant.  The Court has marked the transcripts as Court's Exhibit 2.

-1-

### A.  Herbert Tilley

In June of 2007, I received a letter and deposition from Lloyd London.  I have the letter at home; however, Defendants' Exhibit 5 is a copy of the letter I received.  I gave the letter to Ms.  Reese, who is the lady Mr.  London allegedly held hostage, as he was charged in state court.  Ms.  Reese affirmed the letter was from Mr.  London.  I may have also received a second letter, but I am not certain.  However, I did not write back of acknowledge the letter or letters in any manner.

### B.  Allie Wilkerson

I was a detention officer at the Johnson County Detention Center during the time in question.  On Plaintiff's Exhibit 2, which is the state habeas petition Mr.  London attempted to file, it shows I received it into internal mail at the jail.  However, I do not have any independent memory of the habeas petition.  My responsibility at the time would have been to receive the mail from the inmates, such as Mr.  London, and take that mail to the control room.  I dated the material as of July 20, 2009, and that appears to be correct.

I do not know the procedure for habeas or 2254 petitions.  The jail administrator would deal with those issues or pleading forms.  As to mail procedures, privileged mail goes to sheriff's office for stamp, if not privileged then goes to pod and mailed out the next day.

In this instance, the habeas petition was placed in envelope and sealed in front of me and then taken to front pod.

### C.  Robert Peterson

I was the jail administrator at the Johnson County Detention Center beginning December 3, 2007.

Legal mail with stamps goes to the "in front" mail part of the facility, mail with no stamps goes to the sheriff's office for mailing.  As to Mr.  London's mail, after December 12, 2008 we sent all mail to Ms.  Lisa Jones Ables, an attorney in Little Rock, Arkansas, who was representing Plaintiff.

On December 3, 2008, I was in attendance when the judge ordered all of Plaintiff's mail to be sent to Ms.  Ables.  For nine days there was a gap where the mail was not forwarded, but after December 12, 2008,

the directive was placed in the "pass down book" for all jail staff.  However, if Plaintiff was placed in the facility today, I would treat his mail as I do the mail of any other inmate.

### D.  Jane Houston

I am the circuit clerk for Johnson County, Arkansas.  I have brought with me a certified copy of the Criminal Docket sheet as it pertains to Mr.  London's state court criminal case.  (Court's exhibit 1).

I received twenty to thirty letters and other documents from Mr.  London.  The notice of speedy trial which Mr.  London asserts was sent on August 5, 2007 as an attachment to his state habeas petition was not received.

The docket shows no "verbal orders" entered on December 3, 2008.  The only entry for that date was a "review hearing."

The docket shows the information was filed against Mr.  London on June 4, 2007.  Attorney Michael Helms, a public defender, was appointed on June 25, 2007.  James Dunham was appointed on March 17, 2008. Lisa Jones Ables was retained on July 30, 2008.  There is no indication on the docket that Plaintiff was ever proceeding pro se.

### E.  Cris Curtis

I was a detention officer in the Johnson County Jail during the time in question.  Plaintiff had several documents to mail during the time he was incarcerated in Johnson County.  I don't specifically remember any mail Plaintiff gave me to send out.  However, I would have followed the procedures for the mail when I received it from any inmate.

### F.  Jerry Dorney

The mail policy at the detention center is that when mail comes into the center it is opened for contraband, and looked over; outgoing mail is scanned and sealed.  If outgoing mail has a stamp, it is taken to the post office box to be mailed.  If outgoing mail has no stamp, it its taken to the sheriff's office to run through the courthouse machine for postage and then mailed.

-3-

As far as withholding mail of Mr. London's, on April 8 or 9, 2007, there was a hearing before Judge McCain were the judge placed a no contact order on Mr. London regarding Linda or Glyn Reece. At that point, any mail Mr. London directed to those individuals was withheld and Ms. Reece's daughter would come and pick up. We also stopped any mail going to the address of Ms. Reece, even if it was addressed to other individuals.

In December of 2008, Judge Sutterfield ordered that all mail be sent to Lisa Jones Ables, who was then Mr. London's attorney. We then forwarded that mail as was directed by the judge. We did not change this procedure once Plaintiff entered his guilty plea. The legal mail was sealed, and we simply forwarded that to Ms. Ables.

We have no law library for the inmates. However, when Mr. London asked to use the law library , we contacted the judge on Mr. London's case, and were told that Mr. London had counsel appointed. Thus, Mr. London was given access to his attorney so satisfy his need for access to the Court. There was never an indication on the jail log that Mr. London was pro se.

G. Jimmey Dorney

On April 6, 2007, I remember escorting Mr. London. I also remember having a conversation with him inside the residence of Glyn and Linda Reece.

If Mr. London had legal mail, I would have been the person to personally run it through the postage machine and place in post office box in Clarksville, Arkansas. This would have been legal mail, therefore I would not open the envelopes to know what was in them.

I was not personally aware of mail being withheld. There are policies and procedures regarding inmate mail. I was not present during the verbal order to withhold was given, regarding the directing of mail to Ms. Ables, but I noticed Mr. London's mail was being sent to her.

I was not aware Plaintiff was ever granted pro se status.

-4-

### H.  Lloyd London

I filed a notice of withdrawal of my guilty plea in state court; however, I filed no Rule 37 Motion, and no notice of appeal.  I then filed a state habeas petition on July 20, 2009, and had this motion been addressed, then the issue would have bene resolved in my favor prior to trial.

I am asking that all issues raised in my state and federal habeas petitions be considered exhausted because the defendants stole my mail and as such have forfeited any arguments as to exhaustion of remedies. I know this mail was stolen because I sent out letters and motions, but received nothing back.  I never heard a verbal order on December 3, 2008 directing my mail to Ms.  Ables.

I was granted pro se status on October 3, 2007.  On December 17, 2007, I was given stand-by counsel. On July 30, 2009 I hired Ms.  Ables.  If I had been given law library access I could have assisted my counsel.

## II.  Discussion

### A.  Denial of Access to the Court - Law Library

#### 1.  *Plaintiff is Represented by Counsel*

Availability of law libraries is only one of the many constitutionally acceptable methods of assuring meaningful access to the courts.  Inmates must be provided with some access to legal materials or to legal assistance so that they can prepare and pursue their complaints.  *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996).

Plaintiff initially claimed he was denied access to the court on July 19, 2007 when he was told by Ruth Ann Howell, the then jail administrator, that she was refusing all grievances requesting legal case law, legal books, and the like.  (Doc.  53).  Plaintiff further claimed that he had letters dated May 5, 2007 and June 28, 2007 listing thirty-one legal cases, which Ms.  Howell refused to provide him.  Plaintiff has not contended he was proceeding *pro se* on May 5, 2007; June 28, 2007; or July 19, 2007 - rather it is clear from the record that Plaintiff was represented by counsel at these relevant dates.

The United States Court of Appeals for the Eighth Circuit has held that when an inmate has

representation, a prison official's denial of access to a law library is not a denial of meaningful access to the courts. *See Entzi v. Redmann*, 485 F.3d 998 (8th Cir. 2007) ; *see also Bounds v. Smith*, 430 U.S. 817, 828 (1977) (holding that prison authorities must provide inmates with adequate law libraries or adequate assistance from persons trained in the law). Plaintiff herein has made no claim he was denied access to his attorney during the times in which he was represented by counsel.

Furthermore, even if Plaintiff did not have access to his attorney while detained in Johnson County, his claim still fails. An inmate does not have "an abstract freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351-53. Rather, to prevail on an access-to-court claim, a Plaintiff must show actual injury. At the hearing, Plaintiff stated his "injury" was the inability to assist his counsel, although it is unclear how legal research by a layperson would assist Plaintiff's attorney who was trained in the law.

Plaintiff has not contended that he missed deadlines, or was unable to file documents due to the denial of access to the court relevant to the dates listed above. In fact, any motion or document the Plaintiff attempted to file while represented by counsel likely would have not been considered by an Arkansas trial court. *See Hamilton v. State*, 74 S.W.2d 615 (2002) (holding pro se pleadings need not be considered when a defendant is represented by counsel at the time of filing). In fact, Judge Sutterfield entered an Order to this effect on June 21, 2007. (Def. Ex. 1). Thus, there is no evidence to support Plaintiff's denial of access to the Court claim for this time frame.

### 2. *Plaintiff Proceeds* Pro se

Plaintiff has further alleged that he was granted *pro se* status during a hearing held on October 3, 2007, and that his right of access to the court or law library was not restored in accordance with this change in status. Defendants state they had no knowledge that Plaintiff was *pro se*, and the jail log never reflected this status. A review of the state-court docket sheet likewise does not reflect that Plaintiff was ever proceeding *pro se*. In fact, the docket sheet omits the hearing held on October 3, 2007 in its entirety.

However, the Court has obtained a copy of the transcript from the hearing held on October 3, 2007

before the Honorable Dennis C. Sutterfield. The relevant portions of that transcript (Court's Ex. 2, pg. 12 at lines 7-8) reflect that after Judge Sutterfield cautioned Plaintiff regarding the perils of representing himself, the judge stated "you're pro se now. I'm gonna let Mr. Helms [the public defender] out and you're on your own." Later, after an exchange in which Plaintiff stated he would attempt to retain counsel, Judge Sutterfield also stated "you do have a right under the Constitution to represent yourself. So I'm gonna give you that opportunity because that's what you want." *Id.* at pg.12 line 25 - pg.13 lines 1-2. The record also reflects that an Order was to be entered, but there is no copy of that Order before the Court, nor is it reflected in the docket sheet. (Court's Ex. 1). However, an Order filed on January 7, 2008 reflects that "defendant insists on representing himself." (Def. Ex. 3).

There was little activity in Plaintiff's state court case from October 3, 2007 until January 7, 2008 when stand-by counsel was appointed to Plaintiff. (Def. Ex. 3; Court's Ex. 1). As Plaintiff has made no allegation he was unable to contact his stand-by counsel, the Court finds the only relevant time for Plaintiff's denial of access to the court claim regarding the law library while he was *pro se* would be from October 3, 2007 until January 7, 2008. There is nothing in the record before the Court to suggest that after January 7, 2008, Plaintiff would not be able to have assistance from his stand-by counsel.

However, Plaintiff has provided no grievance or other request for access to the law library during this time frame, nor has he indicated that any such request was made. In the Order from Judge Sutterfield filed January 7, 20008, Judge Sutterfield references "numerous motions" made by Plaintiff. (Def. Ex. 3). Plaintiff has not provided to this Court any evidence of the content of these motions or how access to the law library was denied him, if he even requested such access regarding preparation of these motions, or how access to the law library would have allowed him to prevail on these motions. In fact, the majority of those motions appear to be meritless. *Id.* (stating the motions "display a total lack of competency and understanding of the relevant legal issues in this matter"); *see also White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007)("To prove actual injury, [a prisoner] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being

-7-

impeded.'")(*quoting Lewis v. Casey,* 518 U.S. 343, 353 (1996)).  As Plaintiff has presented no evidence his

efforts to pursue a legitimate legal claim were hindered by any denial of access to the law library his claim of

denial of access to the court should be denied.

### B.  Denial of Access to the Courts  - Interference with Postal Mail

Plaintiff claims the following items of mail were intentionally withheld from delivery by the

Defendants:

(A)      August 5, 2007 - Letter to Jane Houston, Clerk of Court for Johnson County, demand for
speedy trial attached to state habeas petition

(B)      June 23, 2007 - Letter to Rev.  Tilley regarding request for written deposition

(C)      November 21, 2008 - a Motion for a Writ of Mandamus

(D)      July 20, 2009 - a state habeas corpus petition

(E)      July 20, 2009 - a federal habeas petition

(F)      September 9, 2009 - a Notice of Appeal addressed to Jane Houston, Clerk of Court for
Johnson County

Mail to the courts may be delivered by the inmate to prison officials in sealed envelopes and may not

be opened, read, or inspected.  *See, e.g., Stone-El v. Fairman*, 785 F. Supp. 711 (N.D. Ill. 1991) (no legitimate

interest in opening mail from inmates to judges or court clerks); *Taylor v. Sterrett*, 532 F.2d 462 (5th Cir.

1976) (holding there is no justification "whatsoever" for opening or reading correspondence addressed to the

courts)*; Bach v. People of State of Ill.*, 504 F.2d 1100 (7th Cir. 1974); *Haston v. Galetka*, 799 F. Supp. 1129

(D. Utah 1992); *Gates v. Collier*, 349 F. Supp. 881 (N.D.  Miss. 1972), judgment aff'd, 489 F.2d 298 (5th

Cir. 1973), reh'g granted, 500 F.2d 1382 (5th Cir. 1974) and judgment aff'd, 501 F.2d 1291 (5th Cir. 1974)

and order amended, 390 F. Supp. 482 (N.D. Miss. 1975), judgment aff'd, 525 F.2d 965 (5th Cir. 1976) and

order supplemented, 423 F. Supp. 732 (N.D. Miss. 1976), judgment aff'd and remanded, 548 F.2d 1241 (5th

Cir. 1977); *Martyr v. Bachik*, 755 F. Supp. 325 (D. Or. 1991) (extending this right to mental patients who

have been found not guilty by reason of insanity and confined to a mental facility); *Stover v. Carlson*, 413 F. Supp. 718 (D. Conn. 1976). Courts have steadfastly refused to permit prison officials to censor, screen or in anyway interfere with communications to and from Courts. *See, e.g., Brewer v. Wilkinson*, 3 F.3d 816 (5th Cir. 1993) (holding that allegation that prison officials' actions prevented inmates from submitting papers and pleadings to the court stated a constitutional violation); *Bryan v. Werner*, 516 F.2d 233 (3d Cir. 1975); *Sostre v. McGinnis*, 442 F.2d 178 (2d Cir. 1971).

The Eighth Circuit has not explicitly addressed whether correspondence *to* arguably legal sources other than attorneys, i.e. courts, judges, advocacy organizations, or law enforcement officials, is to be considered "legal mail" for the purposes of constitutional protection. However, the Eighth Circuit in *Harrod v. Halford,* 773 F.2d 234, 236 (8th Cir. 1985), held that "the mere fact that a letter comes *from* a legal source is insufficient to indicate that it is confidential and requires special treatment." In *Harrod,* the Eighth Circuit found it permissible for a correctional facility to open letters not properly marked as "confidential" as required by the facility's policy even though the letters were sent by the clerk of the district court, a district judge, a magistrate judge, the United States Department of Justice, the county corrections department, the bureau of community correctional services, and a law firm. *Id.* However, in *Stone*, 785 F. Supp. at 716, the Northern District of Illinois differentiated between inmate correspondence *from* a Clerk of Court and *to* a Clerk of Court, holding the court "can fathom no legitimate governmental interest in opening or inspecting letters from inmates to either judges or clerks." *Id.* at 716. In the Report and Recommendation entered earlier in this matter (doc. 54), this Court acknowledged the Northern District of Illinois rationale to be sound. The Report and Recommendation was adopted by the District Judge. (Doc. 57).

Denial of access to legal mail is a denial of access to the court claim, and requires an actual injury. *Turner v. Ms. Douglas*, 2007 WL 87628, at *2 (E.D. Ark. Jan. 10, 2007) (citing *Lewis v. Casey*, 518 U.S. 343, 349 (1996)) ("To state a valid § 1983 claim due to interference with an inmate's legal mail, an inmate must allege that a defendant's deliberate and malicious interference actually impeded her access to the court

or prejudiced an existing action."); *see also Jones v. Mail Room Staff*, 74 Fed. Appx. 418, 419 (5th Cir. 2003) (unpub. per curiam) (citing *Lewis*, 518 U.S. at 349-51) (plaintiff did not allege that he was prejudiced in any pending or contemplated litigation because the mail room staff had opened his legal mail; therefore, he fails to state a claim).

>  *1.  August 5, 2007 - Letter to Jane Houston, Clerk of Court for Johnson County, demand for speedy trial attached to state habeas petition*

Plaintiff has alleged an August 5, 2007 letter to the Clerk of the Court, Jane Houston, which contained a demand for speedy trial and a state habeas petition were stolen from the mail and intentionally kept from the mail by Defendants.  Plaintiff's claim fails for several reasons.  First, Plaintiff has presented no evidence this mail was stolen, much less that it was maliciously or deliberately stolen by Defendants.  Plaintiff rests his theory of theft on the assumption that since he received no return, the mail must have been stolen.  Second, if the mail was interfered with in some manner, Plaintiff can show no injury.  To the extent Plaintiff was attempting to file a motion, any such motion, as noted above, would have likely been futile as Plaintiff was represented by counsel at this time.  (Court's Ex. 1, showing counsel appointed on June 25, 2007).  Thus, Plaintiff has presented no evidence of harm, and his claim must be dismissed.

>  *2.  June 23, 2007 - Letter to Rev. Tilley regarding request for written deposition*

At the evidentiary hearing conducted in this matter, Defendants presented Rev. Tilley as a witness and presented him with a letter and attached deposition purported to be a copy of that which Plaintiff mailed to Rev. Tilley on June 23, 2007.  (Def. Ex. 5).  Plaintiff provided no objection to this letter being the same which he attempted to mail Rev. Tilley.  It was Rev. Tilley's testimony that he had indeed received this letter from Plaintiff.  Plaintiff provided no contradictory testimony.  Thus, Plaintiff's claim regarding this correspondence being interfered with by Defendants must fail.[1]

---

[1]  To the extent Plaintiff is claiming the copying and forwarding of the letter to Rev. Tilley are constitutional violations, those claims were denied in the Report and Recommendation and that recommendation

### 3. *November 21, 2008 - Motion for a Writ of Mandamus*

At the hearing, Plaintiff clarified that the Motion for Writ of Mandamus sent on November 21, 2008 was sent to Leslie Steen, the Clerk of Court for the Arkansas Supreme Court and the Arkansas Court of Appeals. At the hearing or in earlier pleadings Plaintiff presented no evidence of how he was harmed by the alleged interference with this letter, beyond the conclusive reasoning that if the Motion had been filed, Plaintiff would have prevailed on the motion.

The Court notes again, that Plaintiff's only evidence to support interference with this mailing is the mere fact Plaintiff did not receive a reply. Again, no evidence is before the Court to support Defendants' interference with mailing this item, much less to support any deliberate or malicious interference. However, even assuming Plaintiff's mail to Mr. Steen was interfered with by Defendants, while Plaintiff alleges this prevented him from filing the mandamus motion, his attorney of record at this time, Ms. Lisa Jones-Abels certainly was not prevented from doing so. The criminal docket (Court's Ex. 1) reflects that Ms. Abels was retained on or around July 30, 2008. There was no evidence before the Court that Ms. Abels did not continue to represent Plaintiff on November 21, 2008. As such, Plaintiff has failed to provide evidence of any prejudice in any pending or contemplated litigation and his claim must fail.[2]

### 4. *July 20, 2009 - State Habeas Corpus Petition*

Plaintiff claims his State Habeas Corpus Petition was withheld from delivery. However, the evidence presented at the hearing, and subsequent to the hearing, show the petition was indeed mailed. The evidence presented by the Defendants was that on December 3, 2008, a hearing was held in front of Judge Sutterfield,

---

was adopted by the district judge, causing that claim to have previously been denied. (*See* docs. 54 and 57).

[2] At the hearing, Plaintiff submitted Plaintiff's Exhibit 3, which appears to be a copy of a Mandamus Motion sent to the Arkansas Supreme Court. However, this Motion is dated November of 2007, but contains as attachments documents dated 2008. The other evidence presented at hearing was that the proper date was November of 2008. Even it the proper date is November of 2007, a time when Plaintiff would have been pro se, Plaintiff still has failed to provide any evidence of deliberate or intentional interference or harm and his claim still fails.

wherein the Judge directed the sheriff to forward all of Plaintiff's mail to Plaintiff's attorney, Lisa Jones Ables, rather than mail it directly to the addressee.  Defendants stated this order was entered by the judge due to Plaintiff sending letters to persons with whom he was ordered to have no contact.

The Court obtained a transcript of the December 3, 2008 hearing.  (Court's Ex. 2).  The Prosecuting attorney brought forth the issue of Plaintiff attempting to contact the victims in his state criminal case, or have other released inmates contact the victims,  and asked that Plaintiff's mail be sent through the sheriff's office or Plaintiff's counsel to ensure Plaintiff was not contacting victims. (Court's Ex. 2, pg. 21, lines 8-24). Plaintiff had been filing numerous *pro se* motions with the circuit clerk, despite being represented by counsel, and was sending a courtesy copy of each of his filings to the victim's daughter and to the victim.  *Id.*  at 22, lines 11-16.  The Court responded that "[i]f it happens in the future and it's proven up to the Court that there has been either direct or indirect communication, this defendant will be, by my order, will be held in contempt and locked down and put into isolation, solitary confinement.  Now, I don't know what else I can do." *Id.*  at lines 17-22.

Judge Sutterfield later stated "I don't have it in front of me, I just have the allegation . . . ." *Id.* at 23, line 3, indicating that he was not making a ruling that day, but merely setting forth what would happen if Plaintiff persisted and his contact with victims was proven.

Judge Sutterfield went on to admonish Plaintiff for continued *pro se* filings when represented by counsel and stated that under Arkansas Supreme Court precedent, the Court would not be considering the *pro se* filings. (Court's Ex. 2).  In response, the prosecuting attorney stated, "Judge, I'll include that in the order." *Id.*  at pg. 25, line 7.  This response indicates there was an order entered that day, consistent with the testimony of Defendants.  However, no such order was presented to this Court, nor is any order noted on the docket sheet. Finally, Judge Sutterfield stated "the only thing I know to do, if a defendant continues to violate the Court's conditions on these mailings and initiating pleadings, is to try to take privileges away from him at the jail." *Id.*  at lines 9-12.

-12-

Thus it appears the Defendants reasonably believed there was an Order from Judge Sutterfield requiring them to send all of Plaintiff's mail to his attorney, Ms. Lisa Jones Ables. A claim for interference with an inmate's legal mail requires deliberate and malicious interference. *Lewis v. Casey*, 518 U.S. 343, 349 (1996) (To state a valid § 1983 claim due to interference with an inmate's legal mail, an inmate must allege that a defendant's deliberate and malicious interference actually impeded her access to the court or prejudiced an existing action"). There was no evidence presented to show that any interference, assuming that the forwarding of Plaintiff's mail to his attorney could be construed as interference - an issue this Court does not reach, was deliberate or malicious.

Moreover, sending the mail to Ms. Ables is exactly what the Defendants did, consistent with the testimony at the hearing. The Court propounded a questionnaire to Ms. Ables after the hearing, in which Ms. Ables also stated the "Johnson County Detention Center was *ordered* by the Circuit Court to have all mail that Lloyd London was attempting to mail from the facility to be forwarded to me for review . . .." (Doc. 84, pg. 2, ¶ 1)(emphasis added). Ms. Ables then confirmed that she had received the State Habeas Corpus Petition which was dated July 20, 2009, and provided a copy of this document. *Id.* at pg. 2-3, ¶ 2(a)). Ms. Ables also indicates she discussed this document with Mr. London and it was determined the petition was premature, without merit, and would not be filed. *Id.* Mr. London provided no response to Ms. Ables' statement. Accordingly, it is clear the defendants did not "steal" this piece of mail, but did mail it as they were ordered, or as they reasonably believed they were ordered, by Judge Sutterfield.

### 5. *July 20, 2009 - a federal habeas petition*

Ms. Ables, in her response to the Court's questionnaire, also stated that she had received the July 20, 2009 federal habeas petition. (Doc. 84, ¶ 2(b)). Again, it was determined that the petition was premature, without merit, and would not be filed. *Id.* Thus, the same analysis applied above regarding the state habeas petition would apply to Plaintiff's claims regarding the federal habeas petition.

### 6. *September 9, 2009 - a Notice of Appeal addressed to Jane Houston, Clerk of*

-13-

*Court for Johnson County*

Ms.  Ables, in her response to the Court's questionnaire, also stated that she had received the September 9, 2009 Notice of Appeal/Withdrawl of Guilty Plea.  (Doc.  84, ¶ 2(c)).  Ms.  Ables indicates the cover letter showed this document was mailed to the clerk with service upon herself and the prosecuting attorney.  *Id.*  Ms.  Ables states she was no longer the attorney of record after the guilty plea was entered, and she received this document as her copy, not due to mail being forwarded from the jail.  *Id.*  Accordingly, there is no evidence of interference with the mail as the only evidence presented on the mater is that the item was mailed as intended by Plaintiff.  Moreover, if interference could be found by Plaintiff's assertion the petition was not received by the Clerk of Court, and the fact it is not recorded on the docket sheet, there was no evidence presented that Defendants withheld the item from delivery to the Clerk of Court or that they maliciously or deliberately interfered with this item of mail in any manner.

## III.  Conclusion

For the reasons stated above, I recommend that judgment be entered in the Defendants' favor and the complaint (doc.  2) be dismissed with prejudice in its entirety.

The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.

The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

**IT IS SO ORDERED** this **19th day of July 2010.**

*/s/ J. Marschewski*_____
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-14-